**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fornix Holdings LLC, et al., | No. CV-22-00494-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' second *ex parte* motion for a temporary restraining order ("TRO"), which asks the Court to enjoin Emre Temiz from pilfering their property, exposing it on a website, and reaping ill-gotten booty from those acts. (Doc. 12.) The Court ordered Defendants Namecheap and Cloudflare to respond or file a notice of intent not to respond. Namecheap did neither, and the time to do either has passed. The Court grants the motion.

**I. Background**

Plaintiff CP Productions, Inc, an Arizona company, operates <gloryholeswallow.com> ("the Website") where it distributes and markets 955 self-produced "visual and audiovisual works that depict nude females and males engaging in sexual activities" (the "Works"). (Doc. 12 at 7.) Plaintiff Fornix Holdings LLC formed to prosecute, manage, and protect the copyrights in the Works. (*Id.*) So far, Plaintiffs have registered copyrights for 157 of the Works and is seeking to register copyrights for the rest

of the Works. (*Id.*) Plaintiffs paywall their full-length Works on the Website, charging a subscription fee. (*Id.*) Plaintiffs also include a warning in each of the Works that "It's illegal to share [the Work]." (*Id.* at 8.)

But, Plaintiffs allege, Temiz has snatched images from 500 Works from the Website and exhibited them on <cumswallowingmovies.org> ("the Blog") in a blog format. (*Id.*) The Blog allows visitors to view only Plaintiffs' Works by filtering blog posts for "Gloryhole Swallow," Plaintiffs' trade name. (*Id.*) Judging by the number of comments teeming below each Work, visitors to the Blog have peeped the Works "hundreds, if not thousands of times." (*Id.* at 9.)

Plaintiffs further allege that Temiz hosts unauthorized copies of the Works on certain peer-to-peer file-sharing platforms. The thumbnails of Plaintiffs' works on the Blog include hyperlinks to the third-party file sharing sites where a visitor may download unauthorized copies of Plaintiffs' works. (*Id.*) Because these file-sharing sites reward file uploaders like Temiz on a per-view or per-download basis, Temiz profits from distributing unauthorized copies of the Works. (*Id.*) Plaintiffs attempted to contact Temiz through the contact email address posted on the Blog. They received no response. (*Id.* at 10.)

Plaintiffs allege they have been harmed financially by Temiz's unauthorized distribution of their Works, and their paying subscribers "complain" about the "free, pirated videos" available on Temiz's site. Thus, they ask this Court to grant a temporary restraining order directing Namecheap, the service provider, to disable the Blog and place a registrar lock on the domain name. Plaintiffs also ask the Court to allow alternative service upon Temiz by email.

**II. The Temporary Restraining Order**

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, No. CV-20-00893-PHX-JAT, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020). The standards for issuing a TRO are identical to those for issuing a preliminary injunction. *Whitman v. Hawaiian Tug & Barge Corp./Young Bros., Ltd.*

*Salaried Pension Plan*, 27 F. Supp. 2d 1225, 1228 (D. Haw. 1998). A plaintiff seeking a TRO must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of immediate relief, that the balance of equities tips in its favor, and that a TRO is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These elements are balanced on a sliding scale, whereby a stronger showing of one element may offset a weaker showing of another, although all elements still must be met. *See Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131, 1134-35 (9th Cir. 2011). The movant bears the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

First, success on the merits. Plaintiffs must satisfy two requirements to present a prima facie case of direct copyright infringement: (1) the plaintiff's ownership of the allegedly infringing materials, and (2) that the alleged infringer violated at least one exclusive right of the plaintiff under 17 U.S.C. § 106. *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F.Supp.3d 957, 969 (C.D. Cal. 2016).

Plaintiffs have copyright registration in many of the Works and enjoy the exclusive right to distribute and display those registered Works. (Doc. 1 ¶ 26.) This satisfies ownership. 17 U.S.C. § 410(c) (copyright registration establishes ownership); 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right is under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."). Temiz has reproduced the 100s of Plaintiffs' Works without authorization and uploaded them to file-sharing websites for free reviews and downloads. (Doc. 1 ¶ 40.) This action infringes upon those rights and thus favors a TRO. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (finding a plaintiff's distribution right violated when the defendant made files searchable and copiable for others to download through a third-party file-sharing service).

Second, irreparable harm. The Ninth Circuit requires an evidentiary showing "sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Fla.*

*Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013). "[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Plaintiffs have presented evidence of customer complaints at Temiz's free distribution of the Works when they have to cough up a nontrivial membership fee. (Doc. 12-2 ¶ 35.) For this, Plaintiffs allege, customers have discontinued their memberships at the same time Temiz posts a new spate of the Works. (Doc. 2-2 ¶ 36.) Continued loss of goodwill is likely and thus irreparable injury is likely. *Herb Reed*, 736 F.3d at 1250.

Third, the balance of equities. Entering a TRO would protect Plaintiffs' intellectual property rights, and any hardship for Temiz would be limited to the infringing activities. *See Broad. Music Inc. v. BLK, III LLC*, No. CV-19-01358-PHX-DWL, 2020 WL 2395118, at *5 (D. Ariz. May 12, 2020); *see also Triad Sys. Corp. v. Se. Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995). The balance of hardships weighs in favor of granting the injunction.

Lastly, the public interest in the orderly administration of copyright laws favors an injunction. *See Disney*, 869 F.3d at 978.

On balance, the four factors all favor a TRO disabling the domain name and barring Temiz from transferring the domain name or accessing it and downloading its content. Plaintiffs also ask the Court to order Namecheap to transfer the domain name to a Namecheap account over which Plaintiffs have exclusive control, but such a transfer would go beyond preserving the status quo. The other remedies are sufficient to stop any further infringement on Plaintiffs' intellectual property rights.

**III. Issuing a TRO *Ex Parte***

A party seeking an *ex parte* TRO also must comply with Federal Rule of Civil Procedure 65(b)(1) by (1) substantiating its allegations of irreparable harm with an affidavit or verified complaint and (2) certifying in writing any efforts made to give notice to the non-moving parties, and why notice should not be required. Further, the Court may issue a TRO only if the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined

or restrained." Fed. R. Civ. P. 65(c). The Court may waive the bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Barahona-Gomez v. Renno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

Plaintiffs substantiated their allegations of irreparable harm with an affidavit by David Graves, owner of both Plaintiffs. (Doc. 12-2.) If Plaintiffs were required to give notice, Plaintiffs argue, Temiz, upon receiving notice would likely take one of the following actions: (1) "quickly delete the infringing blog entries' links to the unauthorized copies . . . and replace them with new entries and links by reuploading the infringing videos" or (2) "deactivate or transfer" the Blog "to another domain name or web host" to dodge this Court's jurisdiction. (Doc. 12 at 20; *accord* Doc. 12-2 ¶ 25 (noting that the defendant deleted its contact information once contacted).) The Court agrees that notice should not be required in this instance.

As for the bond, it does not appear that Temiz would lose revenue earned directly from the Blog, as it is not a commercial website. To the extent Temiz would be harmed by a loss of revenue from downloads of the registered Works made on the file-sharing sites, Temiz would have no legitimate claim to proceeds and is thus not legally harmed in that case. The Court determines that a minimal bond of $100 is appropriate.

**IV. Alternative Service by Email**

Plaintiffs also ask to serve Temiz by emailing it at the posted contact email on the Blog. As a foreign defendant, Temiz may be served by any method reasonably calculated to give notice. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). Plaintiffs' only contact information for Temiz is an email address previously posted on the Blog but now removed, cumswallowingmovies@gmail.com. The Court thus finds that service by email is appropriate and reasonably calculated to give notice under these circumstances.

/ / /

/ / /

/ / /

## V. Conclusion

Plaintiffs have met their burden to show that an *ex parte* TRO is appropriate. Because Temiz is a foreign defendant, the Court permits service by email. Finally, the Court will convert Plaintiffs' TRO motion into a motion for a preliminary injunction and set a briefing and hearing schedule.

**IT IS ORDERED** that Plaintiffs' *ex parte* motion for temporary restraining order (Doc. 12) is **GRANTED** as follows:

1. Namecheap, Inc. as registrar of the domain name <cumswallowingmovies.org>, is directed to immediately, upon serving copies of this order, complaint, and moving papers by email at Legal@namecheap.com, disable the domain name and place a registry hold on the domain name, rendering it inactive and nontransferable pending further Order of the Court.

2. Cloudflare, Inc., as the website hosting service provider for "cumswallowingmovies.org" is directed to immediately, upon serving copies of this order, complaint, and moving papers by email at abuse@cloudflare.com, suspend any services to the cumswallowingmovies.org website and place an administrative lock on the website to prevent accessing and downloading the content of the website or transferring the content to another domain name or hosing service, pending further Order of this Court.

**IT IS FURTHER ORDERED** that Plaintiffs shall serve a copy of this Order, the complaint, and all papers filed in support of this Order on Emre Temiz by email at cumswallowingmovies@gmail.com by May 26, 2022.

**IT IS FURTHER ORDERED** converting the motion for temporary restraining order in a motion for preliminary injunction. Defendants shall file a response by June 9, 2022, and Plaintiffs may file a reply by June 16, 2022. The Court will set a preliminary injunction hearing for June 23, 2022, at 9:30 a.m. (Arizona time). The parties shall notify

the Court by June 16, 2022 whether the hearing will be oral argument or an evidentiary hearing.

Dated this 23rd day of May, 2022.

Douglas L. Rayes
United States District Judge